UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE

50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

**LETTER OPINION**

November 20, 2008

Dennis R. Lafiura
Michael F. Cicero
Karen Alfieri Hefner
Day Pitney LLP
P.O. Box 1945
Morristown, NJ  07962-1945
    (*Attorneys for Plaintiff*)

Lauren B. Cohen
175 Farview Avenue
Paramus, NJ 07652
    (*Attorney for Defendant*)

    **RE:    Howard Johnson Intl., Inc. v. MAC (USA) Trade, Inc.
            Civ. No. 06-5588 (WJM)**

Dear Counsel:

    This matter comes before the Court on two motions.  Plaintiff moves for summary judgment on Counts One, Three, Five, Seven, and Eight of its complaint.  In addition, Plaintiff moves for summary judgment and dismissal of Defendants' four counterclaims.

These motions are unopposed by Defendants.[1]  There was no oral argument.  Fed. R. Civ. P. 78.  For the reasons stated below, both of Plaintiff's motions are **GRANTED**.

## I. BACKGROUND[2]

Plaintiff Howard Johnson International ("HJI") is Delaware corporation with its principal place of business in Parsippany, New Jersey.  (Affidavit of Valerie Capers Workman ¶ 3) ("Workman Aff.").  HJI is not a hotel operator; instead, HJI operates a guest lodging facility franchise system.  (Workman Aff. ¶ 5).  HJI enters into individual license agreements with its franchisees, allowing the franchisees to operate their independently-owned hotels under the "Howard Johnson" trade name and federally-registered service marks ("Howard Johnson marks").  (Workman Aff. ¶ 6).

On December 6, 2001, Defendant MAC Trade ("MAC") entered into a license agreement with Plaintiff to operate a Howard Johnson hotel in Kissimmee, Florida.  (Workman Aff. ¶ 9). Under the license agreement, MAC was required to operate the facility in compliance with HJI's "system standards," which included HJI's quality assurance and insurance requirements.  (Workman Aff. ¶ 13).  Defendant Harsh Manchanda provided a personal guaranty of MAC's obligations.  (Workman Aff. ¶ 33).  Specifically, Manchanda agreed that upon default of the license agreement, he would "immediately make each payment and perform or cause [MAC] to perform, each unpaid or unperformed obligation of [MAC] under the Agreement."  (Workman Aff. Ex. B).

Beginning in August 2003, Defendant MAC's hotel failed four consecutive quality assurance inspections.  (Workman Aff. ¶¶ 37, 39, 42, 46). In April 2004, HJI notified MAC that, due to the quality assurance defaults, reservation services to the hotel were being suspended.  (Workman Aff. ¶ 40).

In addition, MAC failed to pay its recurring fees and submit proof of insurance coverage, as required under the license agreement. (Workman Aff. ¶¶ 41, 44, 45, 47). As a result, HJI terminated the license agreement on June 10, 2005.  (Workman Aff. ¶ 48). After termination of the license agreement, MAC continued to use the Howard Johnson marks at the Kissimmee hotel until February 23, 2006. (Workman Aff. ¶ 55).

---

[1] The Court notes that the Defendant requested an extension of the return date for this motion on August 11, 2008, yet, to this date, has failed to file opposition papers.

[2] If the non-moving party fails to oppose the motion for summary judgment by written objection, memorandum, affidavits and other evidence, the Court "will accept as true all material facts set forth by the moving party with appropriate record support." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir.1990).

On November 21, 2006, HJI filed an eight-count complaint in this Court, praying for the following: Lanham Act damages (Count One); an accounting of revenue derived during the infringement period (Count Two); liquidated damages (Count Three); actual damages (Count Four); recurring fees not paid prior to termination (Count Five); recurring fees not paid post-termination (Count Six); reimbursement for the cost of removing the exterior sign from MAC's facility (Count Seven); and payment by Machanda of MAC's liquidated damages and recurring fees, pursuant to the Guaranty (Count Eight).

MAC then filed a counterclaim, alleging that HJI: (1) breached the license agreement; (2) violated Florida law by not disclosing certain information to Defendants before executing the license agreement; (3) damaged the Kissimmee hotel's exterior sign; and (4) breached an oral promise to Plaintiffs.

HJI now seeks summary judgment on Counts One, Three, Five, Seven, and Eight of its Complaint, as well as dismissal of Defendants' four counterclaims.[3]

## II.   SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  If the non-movant fails to oppose the motion, Rule 56(e) provides that the Court may grant summary judgment only "if appropriate."  Fed. R. Civ. P. 56(e).  Where the moving party has the burden of proof on the relevant issues, summary judgment is appropriate where the moving party is entitled to judgment as a matter of law. *See, e.g. Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990).

The counts on which HJI seeks summary judgment fall into two categories: (1) liability and damages under the Lanham Act; and (2) liability and damages under the license agreement.  Each category of claims will be discussed in turn.

### A.   Liability under the Lanham Act

HJI claims that MAC's unauthorized use of Howard Johnson trademarks after the termination of MAC's license agreement violated Sections 32 and 43(a) of the Lanham

---

[3] If HJI's motion for summary judgment is granted in its entirety as to Counts One, Three, Five, Seven and Eight of the Complaint, HJI will dismiss Counts Two, Four and Six.

Act. 15 U.S.C. §§ 1114(1)(a), 1125(a)(1). As noted above, Defendants have failed to oppose Plaintiff's motion; therefore, the Court accepts as true all material facts set forth by Plaintiff with appropriate record support. *Anchorage Assocs.*, 922 F.2d at 175. Under these facts, Plaintiff is entitled to judgment on its Lanham Act claims as a matter of law.

      i.      *Section 32 Claim*

Section 32 prohibits the unauthorized use of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). To prevail on a trademark infringement claim under Section 32, a plaintiff must prove that the marks in question are valid and legally protectable, owned by plaintiff, and that defendant's use of them is likely to create confusion concerning the origin of the product or service. *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990).

HJI has established all three requisite elements for a Section 32 claim. First, established that the Howard Johnson marks are registered with the United States Patent and Trademark Office. *See* Workman Aff. ¶7. Federal registration of a trademark is prima facie evidence of both the mark's validity and the registrant's right to exclusive use. 15 U.S.C. § 1115(a). In addition, under the terms of the license agreement, MAC did not have the right to use the Howard Johnson marks after termination. *See* Workman Aff. ¶ 24. As such, the Court finds that MAC's unauthorized use of the Howard Johnson marks after termination was likely to create confusion. *See S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 376 (3d Cir. 1992) ("[C]oncurrent use is highly likely to cuase consumer confusion..."); *Opticians*, 920 F.2d at 195 ("[L]ikelihood of confusion is inevitable, when, as in this case, the identical mark is used concurrently by unrelated entities.").

      ii.      *Section 43(a) Claim*

Section 43(a) creates a cause of action for the false designation of the origin of goods or services and false or misleading descriptions of fact, which are likely to cause confusion. *See* 15 U.S.C. § 1125(a)(1)(A). To establish a Section 43 claim, a plaintiff must prove that: 1) the defendant has made false or misleading statements as to his own product [or another's]; 2) there was actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) the deception is material; 4) the advertised goods traveled in interstate commerce; and 5) there is a likelihood of injury to the plaintiff in terms of declining sales and a loss of good will. *Ditri v. Coldwell Banker*, 954 F.2d 869, 872 (3d Cir. 1992).

Similar to the Section 32 claim discussed above, "the key to establishing a claim of false designation of origin lies in proving that defendant's use of a trademark or packaging creates a likelihood of confusion." *Schering Corp. v. Schering Aktiengesellschaft*, 667 F. Supp. 175, 187 (D.N.J 1988). As a general rule, "the same facts which support a claim for trademark infringement or common law unfair competition will support an action for false designation of origin of goods." *Id.* Again, the Court finds that MAC's unauthorized use of the Howard Johnson marks post-termination of the license agreement was likely to create confusion. As such, HJI is entitled to summary judgment on its Section 43(a) claim.

      *iii.     Lanham Act Damages*

Pursuant to the Lanham Act, HJI claims that it is entitled to: (1) compensatory damages based on the recurring fees it would have received during the period of infringement; (2) treble damages due to MAC's use of the Howard Johnson marks post-termination; and (3) attorneys' fees.

HJI estimates its lost recurring fees during the period of infringement to be $43,445.62. While HJI concedes that it cannot predict its lost recurring fees with exact specificity due to MAC's failure to disclose its actual gross income during the infringement period, the Lanham Act authorizes damages even when they are not susceptible to precise calculations. *See Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1565 (11th Cir. 1987). Therefore, HJI estimated the amount of lost recurring fees it would have received during that period. Franchise fees normally received for use of a mark are a proper measure of damages under the Lanham Act. *Id.*

Where, as here, the infringement is willful, the Lanham Act encourages the imposition of treble damages, together with reasonable attorneys' fees. *See* 15 U.S.C. § 1117(b); *see also Microsoft Corp. v. CMOS Techs.,* 872 F.Supp.1329, 1339 (D.N.J. 1994). Since there are no extenuating circumstances demonstrated by Defendants, treble damages in the amount of $130,336.86 should be imposed. Together, the compensatory damages and treble damages assessed under the Lanham Act total $173,782.48. The Court will discuss attorneys' fees separately, *infra*.

    **B.    Liability under the License Agreement**

HJI claims that MAC and its guarantor, Machanda, are liable under the license agreement and the guaranty for outstanding recurring fees and liquidated damages. HJI alleges that MAC stopped paying recurring fees and that Manchanda then failed to pay the missed recurring fees, as required by the Guaranty.

Where the terms of a contract are clear and unambiguous, it is proper for the Court

to determine the contract's meaning as a matter of law. *See Bethlehem Steel Corp. v. United States*, 270 F.3d 135, 139 (3d Cir. 2001). The "fundamental object in interpreting a contract is to ascertain the intent of the parties." *Compass Tech. v. Tseng Lab.*, 71 F.3d 1125, 1131 (3d Cir. 1995). Where the intent can be "cleanly extracted from the clear and unambiguous words that the parties have used, it is equally conventional wisdom that they are held to those words contained in the contract." *Id.*

In the instant matter, the termination provision, found at Section 11.2 of the license agreement, is clear and unambiguous. *See* Workman Aff. Ex. A. In addition, the Court finds that the recurring fees provisions (Sections 7 and 18.1), the liquidated damages provision (Section 12.1), the attorneys' fees provision (Section 17.4), the sign removal provision (Section 13.2) of license agreement are unambiguous, as is the separate guaranty executed by Manchanda. *See* Workman Aff. Exs. A, B. Further, the Court notes that the choice of law provision at Section 17.6 of the license agreement, stating that the parties consent to the application of New Jersey state law. *See* Workman Aff. Ex. A.

    *i.*    *Recurring Fees*

Under Sections 7 and 18.1 of the license agreement, Defendants agreed to pay recurring fees to HJI. These provisions were clear and unambiguous. In spite of this, Defendants stopped paying recurring fees in July 2004 and remained in financial default through termination. Pursuant to the license agreement, HJI is entitled to those recurring fees not paid prior to termination, which total $67,953.03. As such, the Court grants summary judgment on Counts Five and Eight (as it pertains to recurring fees).

    *ii.*    *Liquidated Damages*

As noted above, the license agreement and guaranty provisions dealing with liquidated damages are clear and unambiguous. Here, MAC has not challenged the liquidated damages clause. Further, the Court does not see any basis upon which to challenge the reasonableness of the stipulated damages clause. *See Metlife Capital Fin. Corp. v. Washington Ave. Assocs. L.P.*, 159 N.J. 484, 495, 732 A.2d 493, 499 (1999) ("[t]he overall single test of validity is whether the [stipulated damage] clause is reasonable under the totality of the circumstances"). Since the liquidated damages clause in Section 12.1 appears to be reasonable and enforceable, the Court grants HJI liquidated damages, pursuant to Counts Three and Eight, in the amount of $109,364.00.

    *iii.*    *Sign Removal Costs*

Pursuant to the clear and unambiguous terms of Section 13.2 of the license agreement, MAC is also liable to HJI for the cost of removing signage bearing the Howard

Johnson marks from the Kissimmee facility. This provision states that MAC will reimburse HJI for sign removal costs less a ten dollar "purchase price" for the signage to be paid by HJI. HJI represents that it paid $1500.00 to remove the signs. *See* Workman Aff. ¶ 76. Accordingly, the Court grants HJI summary judgment on Count Seven in the amount of $1490.00.

> iv.   *Prejudgment Interest*

In determining the availability of prejudgment interest on state law claims, the Court will consider New Jersey state law, consistent with the license agreement's choice of law provision. Under New Jersey law, prejudgment interest "has been regarded ... as compensatory - to indemnify the plaintiff for the loss of what the monies due him would [p]resumably have earned if payment had not been refused." *Rova Farms Resort, Inc. v. Investors Ins. Co. of America*, 65 N.J. 474, 506, 323 A.2d 495, 512 (1974). Prejudgment interest may be applied to both liquidated and unliquidated damages. *Busik v. Levine*, 63 N.J. 351, 358-59 (1973).

Section 7.3 of the license agreement provides for prejudgment interest to be assessed at the rate of 1.5% per month. This provision is clear and unambiguous. As such, the Court grants HJI prejudgment interest on: (1) liquidated damages in the amount of $82,304.45 from July 10, 2005 through November 20, 2008; (2) recurring fees in the amount of $52,926.05 from June 10, 2005 through November 20, 2008; and (3) sign removal costs in the amount of $846.58 from February 23, 2006 though November 20, 2008.

> v.   *Attorneys' Fees*

Again, attorneys' fees are addressed in a clear and unambiguous provision of the license agreement. Section 17.4 states that: "[t]he non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement." Absent any countervailing considerations, the Court finds that HJI is entitled to reasonable attorneys' fees incurred in connection with this action. The amount of these fees cannot be determined at this time. Pursuant to Local Civil Rule 54.2, HJI should submit an affidavit to this court establishing its attorneys' fees and costs within thirty days.

### III.   SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS

Defendants have asserted four counterclaims against HJI: (1) that HJI breached the license agreement by failing to repair MAC's computerized reservation system during a two-week period in August 2004; (2) that HJI violated the Florida Franchise Act by failing

to disclose that the success of the franchise hotel was subject to the reservation system operating properly following a hurricane; (3) that HJI's contractor damaged the exterior sign when it was removed in February 2006; and (4) that HJI breached an oral promise to restore the franchise hotel's reservation system in exchange for a $15,000 payment. HJI moved for summary judgment dismissing Defendants' counterclaims. Again, Defendants have failed to oppose.

"[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party's "unsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); see also Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

### A.     Breach of License Agreement Counterclaim

Defendants allege that HJI breached the license agreement by failing to repair MAC's computerized reservation system during a two-week period in August 2004 following Hurricane Charley. MAC's access to the reservation service was suspended at this time, however, due to the facility's poor quality assurance scores in April 2004. *See* Workman Aff. Ex. F. Section 11.4 of the license agreement clearly and unambiguously allowed for this suspension due to MAC's defaults. *See* Workman Aff. Ex. A. MAC has offered no documents or evidence to establish HJI's obligation to fix the reservation service during this period. For the foregoing reasons, this counterclaim is dismissed.

### B.     Florida Franchise Act Counterclaim

In Count Two of their counterclaim, Defendants allege that HJI violated the Florida Franchise Act by failing to disclose that the success of the Kissimmee hotel was subject to the operation of the reservation system following a hurricane. Liability under this Florida statute is predicated on an intentional misrepresentation by the franchisor to the franchisee. *See* Fla. Stat. § 817.416(2)(a)(1) ("It is unlawful, when selling or establishing a franchise or distributorship, for any person: (1) Intentionally to misrepresent, the prospects or chances for success of a proposed or existing franchise or distributorship."). MAC has offered no legal or factual basis to demonstrate a misrepresentation or otherwise support this claim. Accordingly, this counterclaim is dismissed.

    **C.**    **Sign Damage Counterclaim**

Count Three of Defendants' counterclaim alleges that HJI's contractor damaged the exterior sign at the Kissimmee franchise hotel upon removal in February 2006.  Again, MAC presented nothing to support this claim, outside the bare allegations in its counterclaim.  Further, Section 13.2 of the license agreement states that HJI "will have no obligation or liability to restore the facility to its condition prior to removing the signage."  This clear and unambiguous provision of the license agreement, coupled with MAC's unsupported allegations, lead the Court to dismiss this counterclaim.

    **D.**    **Breach of Oral Promise Counterclaim**

In Count Four, Defendants allege that HJI violated an oral agreement entered into between Manchanda and HJI during a May 2005 meeting.  During this meeting, Defendants claim that Manchanda was told that HJI would reinstate the suspended reservation system if Manchanda sent $15,000 to HJI.  According to Defendants, Manchanda then sent a check that was deposited by HJI; however, the reservation system was not restored.  Again, outside of Defendant's bare allegations in the counterclaim, there is no evidence in the record to substantiate the existence of this oral agreement.  Defendants simply attached a cancelled check to their counterclaim.  This is not enough to sustain their claim.  Accordingly, this counterclaim is dismissed.

**IV.**    **CONCLUSION**

In conclusion, Plaintiff's motion for summary judgment on Counts One, Three, Five, Seven, and Eight of its complaint is granted.  In addition, Plaintiff's motion for summary judgment on the four counterclaims raised by Defendants is granted and those counterclaims are dismissed.  An Order accompanies this Letter Opinion.


    /s/ William J. Martini
    **WILLIAM J. MARTINI, U.S.D.J.**